Curia, per Johnson, Chancellor.
This bill was filed by the administrator of the late Hugh' Wilson, against the distributees and creditors of his estate, for the purpose of marshalling the assets amonst them, of any surplus that might remain. Amongst other creditors, Wm. F. Downs presented before the Commissioner, on a reference in 1841, to state the accounts, a demand of $2,316 13, arising out of a deed containing mutual covenants entered into between them and one John Dunlap, which bears date the 2d March, 1826. It recites' that the intestate and Downs had, before that time, entered into partnership in the erection of a set of mills, and a cotton factory; and it is, by mutual consent, dissolved. And it is stipulated, that the *330 intestate should “ take the whole of the said establishment,, together with all the appurtenances thereto belonging, to account for, and pay the present outstanding debts due by the firm, and further, to pay the said Wm. F. Downs the sum of money advanced by him out of his private funds, for and on account of the said establishment, with intterest from the time advanced.” “That the accounts of the said W. F .'Downs, for materials furnished, and services rendered the firm, shall be hereafter adjusted between themselves ; and in the event of their not being able tp settle the same, themselves, they shall, respectively, choose some respectable person each, who shall have the power of umpirage; and the settlement so made by the persons so chosen, shall be obligatory on the parties.” John Dunlap undertakes for the performance of these covenants, on the part of the intestate. The intestate died in June, 1836, and in Sept. 1838, the complainant and Downs agreed to submit the accounts referred to in the covenant to Benjamin Arnold and-■ Lattimore, who stated the accounts from books and. other documents, exhibited by the parties, (between whom there was no dispute or dissention,) which showed the above sum of $2,316 13 to be the balance due to Downs.
The defendant, Janet Wilson, the widow, and one of the distributees of the intestate, charges that, in truth, there was little or nothing due -to Downs, and that there was a combination between him and the complainant, to make up this account to injure the creditors or distributees ; and although the evidence is sufficient to raise some suspicions as to the fairness, I do not see in it enough to establish so grave a charge. She insists, moreover, on the lapse of time, and the statute of limitations, as a bar to this demand; and as the Court are of opinion that this must prevail, it is unnecessary to say more of the evidence on the other grounds of defence. At law, the only remedy that Downs, could have on this contract, is the action of covenant, and that, by the statute of limitations, is barred in four years after the cause of action accrued. Pub. L. 102, Nor is the bar saved by the covenant to submit the accounts to arbitration; such a covenant being no bar to an action on the covenant itself. Hill vs. Hollester, 1 Wils. 129; and *331 no time being limited for the performance of the covenants, the statute commenced to run from the execution of the deed. Nearly ten years had elapsed between the execution of the deed, and the death of the intestate, and there is no evidence of any subsequent undertaking on his part, to perform these covenants ; so that the time limited by the statute, had run out long before his death, and, at law, the action would have been barred in his life-time. The Courts of equity are not within the words of the statute of limitations, but they have adopted the principle in analogy to the Courts of law, and it is now universally admitted, that it may be pleaded, and is a bar there as well as at law. Fisher vs. Tucker, 1 McC. Ch. 169. The case rests, therefore, entirely on the legal effect of the submission of the accounts to arbitration by the complainant, the administrator.
That an administrator may submit to arbitration, matters affecting the rights of the estate which he represents, seems to be generally admitted. Livecard vs. adm'r of Livecard. 2 Const. Rep. by Mill. 218 — 9, and that he would be bound by the award, follows of course. But whether such an award would be binding on the creditors or dis-tributees, is another question, and that does not necessarily enter into this case. Give to the submission and award all the effect that is claimed on the part of Downs, the creditor, and it amounts to no more than an admission on the part of the complainant, that there were unsettled accounts between Downs and the intestate, and that the amount stated in the account made up by the referees, was due to Downs. Do these circumstances take the demand out of the statute of limitations'? Before the bar of the statute is complete, slight acknowledgments will prevent its operation. Young vs. Monpoey, 2 Bail. 278. It will be prevented by the acknowledgment or promise of an executor. Lomax vs. ex’or s. Robertson, decided at Columbia, May Term, 1838. But where the bar is complete, to revive the demand, there must be an express promise, or something that is equivalent to it. Young vs. Monpoey, 2 Bail. 278, and Allcock vs. Ewan, 2 Hill. 326. The obligation to pay, arises out of the new promise, of which the demand, barred by the statute, constitutes the moral *332 consideration, for there is no legal obligation. Now, it is very clear, that an administrator cannot charge the estate of his intestate, by any contract made by himself. McBeth vs. Smith, Tread. Cons. Rep. 677; Nehby vs. Price, 2 N. & McC. 328; O'Neall vs. Abney, 2 Bail. 318. And if it be conceded that the submission and award amount to an express promise to pay, yet it is but a promise of the complainant, and is not binding on the creditors or distri-butees. It is said that an administrator is not bound te plead the statute of limitations, and may, or may not, avail himself of it at his discretion; and Sumter vs. Morse, 2 Hill Ch. 93, is referred to as authority. Something is said to that effect in that case, and it is so laid down in all the elementary books, but that must be taken with some modifications. As before shown, he may prevent the operation of the statute, by a promise to pay at anytime before the bar is complete; and, upon the same principle, I suppose he might revive a demand when the bar of the statute was not complete until after administration granted to him, because it was an existing demand at the death of his intestate, and he alone is bound to know whether it has been paid or not. It is objected, in the 4th ground of this appeal, that the defendants, Janet Wilson, et al, cannot avail themselves of the bar of the statute here, because it was not insisted on atthe reference before the Commissioner. It is conceded that there was no argument on this question, before the Commissioner, but it is distinctly made in the answer; and until proof was offered to rebut it, and there was none other than the submission and award, the party insisting on it had nothing to do but remain passive.
Young, for motion
Cited 2 Mills, Const. Rep. 218, Swycard vs. adm’r. Swycard. Sumter vs. Morse, 2 Hill. Ch. 92; executor not bound to plead the statute.
Wardlaw, contra
Watson on Arb. 17, 47. An administrator may refer matters to arbitration, and he will be bound, but not creditors or distributees. Young vs. Mont-poey. The promise of an administrator, after debt barred, will not revive the demand.
*332 It is, therefore, ordered and decreed, that the appeal be dismissed.
DAVID JOHNSON.